UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFONSO BROWN, et al.,<br>Plaintiffs,<br>v.<br>DOORDASH, INC.,<br>Defendant. | Case No. 25-cv-10817-AMO<br><br>**ORDER RE DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 29 |

This case presents the question of whether Defendant DoorDash, Inc. has misclassified certain workers as independent contractors following the passage of California's Proposition 22. Plaintiffs bring two claims against DoorDash: 1) civil penalties under the California Private Attorneys General Act ("PAGA") for violations of the California Labor Code; and 2) declaratory relief that the statutory preconditions of Proposition 22 have not been met by DoorDash, and even if they had been, Proposition 22 is preempted by the Federal Aviation Administration Authorization Act ("FAAAA"). This case was removed from the Alameda County Superior Court on December 18, 2025. Dkt. No. 1. On January 22, 2026, Plaintiffs voluntarily dismissed Alfonso Brown's claims, leaving only Miles Richardson's. Dkt. No. 18. DoorDash now moves to dismiss Richardson's claims pursuant to Rule 12(b)(6).

Prior to the hearing on DoorDash's motion, the Court raised the issue of subject-matter jurisdiction *sua sponte* and requested additional briefing. Dkt. No. 42. Thereafter, the Court heard oral argument on August 20, 2026, on the existence of federal question jurisdiction and the merits of the Rule 12(b)(6) motion. Having considered the parties' submissions, the Court **REMANDS** this case to the Alameda County Superior Court for lack of subject-matter jurisdiction.

United States District Court
Northern District of California

United States District Court
Northern District of California

**FACTUAL ALLEGATIONS**

The following comprises the well-pleaded allegations from the Second Amended Complaint, which the Court assumes to be true for purposes of this motion.

DoorDash is a company that offers food, grocery, and other property delivery services to customers across the nation. Dkt. No. 33-2 ¶¶ 1, 16. The drivers who provide these delivery services to customers are often referred to as "dashers." *Id.* ¶ 18. When a customer places a delivery order, DoorDash assigns the order to a dasher, and then the dasher has a window of time in which to either accept or decline the order. *Id.* ¶ 23. Declining too many orders can result in consequences, such as loss of incentive pay and ultimate termination. *Id.*

Once a dasher accepts a delivery request, DoorDash directs the dasher's performance by instructing them to:

> drive to the assigned business; find a parking spot; notify DoorDash that they have arrived; pick up the food if it's ready, or wait to pick it up until the business finishes preparing it; pay for the food using a special credit card provided by DoorDash (the "Red Card"); notify DoorDash that they have picked up the food; drive to the customer's location; find a parking spot; follow any specific delivery instructions provided by DoorDash or the customer; deliver the food to the customer; and notify DoorDash that the food has been delivered.

*Id.* ¶ 21. Failure to comply with these directions can result in termination. *Id.* As for payment, DoorDash determines how much to pay a dasher for each delivery and provides an estimate of the driving distance to complete the order. *Id.* ¶ 24.

Overall, DoorDash monitors the dashers' performance along four metrics:

> (1) "On Time" Deliveries— the percentage of orders that were delivered on or before the delivery time provided to the customer; (2) Average Customer Rating—a rating of the dasher's performance from 1 to 5 stars, which customers fill out after receiving their orders; (3) Completion Rate—the percentage of orders that were successfully delivered; and (4) Acceptance Rate—the percentage of order opportunities that the dasher accepts.

*Id.* ¶ 25. Based on the dasher's performance in these areas, they may become eligible for certain opportunities—such as providing large catering or grocery deliveries—or may suffer consequences, including termination. *Id.*

Richardson contends DoorDash has misclassified dashers as independent contractors when

they are actually employees. As alleged, Richardson "took no steps to establish or promote an independent delivery business, such as: (1) incorporating a delivery business entity; (2) obtaining any business license for a delivery business entity; (3) advertising to the general public regarding delivery services; and/or (4) making offerings to provide services of the independent business to the public or to a number of potential customers." *Id.* ¶ 35. Indeed, Richardson never had any of his own customers or clients for delivery services. *Id.* Further, in working for DoorDash, Richardson never engaged in activities typical of an independent contractor. For instance, Richardson did not "maintain any separate business structures or facilities," nor did he "hire assistants or subcontract anyone to provide additional services." *Id.* ¶ 36.

Based on Richardson's assertion that he, and other dashers, were legally employees, he alleges DoorDash violated numerous labor codes. *See, e.g.*, *id.* ¶ 50. In sum, Richardson alleges the dashers do not receive a minimum wage, were not paid for all hours worked, did not receive reimbursements for work-related expenses, did not receive off-duty meal and rest periods, and did not receive timely, accurate wage statements, among other alleged violations. *Id.* ¶¶ 27-33. Under PAGA, Richardson seeks to represent similarly aggrieved individuals and recover civil penalties on their behalf.

Relatedly, Richardson also seeks a declaratory judgment that DoorDash "has not met, and cannot meet, all of the statutory preconditions required under Proposition 22 to invoke its terms," and "even if DoorDash could demonstrate such compliance, Proposition 22 is preempted by the FAAAA." *Id.* ¶ 96. Absent the protections of Proposition 22, Richardson avers DoorDash has willfully and unlawfully misclassified dashers as independent contractors, and thus, has repeatedly violated the California Labor Code. *Id.* ¶ 97.

## DISCUSSION

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002) ("[A] court may raise the question of subject matter jurisdiction, *sua sponte*, at any time during the pendency of the action, even on appeal."). Though the parties did not address subject-matter jurisdiction in their papers on the instant motion, the Court ordered additional

briefing on the issue prior to the hearing. *See* Dkt. No. 42.

To begin, "[a] party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). Per the notice of removal, DoorDash relies on federal question jurisdiction and supplemental jurisdiction as the bases of subject-matter jurisdiction in this case. *See* Dkt. No. 1 at 2 (citing 28 U.S.C. §§ 1331 and 1367). Through federal question jurisdiction, the Court may "hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (citation omitted). To identify whether a state-law cause of action turns on "substantial questions of federal law," the Court must determine whether the claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. DoorDash contends federal question jurisdiction exists in this case because the Court must decide whether the FAAAA preempts California's Proposition 22. Dkt. No. 1 at 6. The Court disagrees.

To establish jurisdiction, the federal issue must be "necessarily raised as 'an essential element of [the plaintiff's] [] claim.'" *Hornish v. King Cnty.*, 899 F.3d 680, 689 (9th Cir. 2018) (citing *Grable*, 545 U.S. at 314-15). The Ninth Circuit's decision in *Hornish* is instructive on this point. There, The Land Conservancy of Seattle and King County had acquired an ownership interest in a railway corridor. *Id.* at 686. The plaintiffs owned land abutting the corridor and sought a declaration of rights, particularly as to the scope of the Conservancy's easement and the width of the railroad corridor. *Id.* In their request for relief, the plaintiffs asserted:

> . . . the original source conveyance to the railroad was an easement and other interests acquired by the railroad were prescriptive easements, that the easements were for railroad purposes only, and that [the plaintiffs] are the fee owners of the railroad right-of-way at issue, and King County only acquired a surface easement for a hiking and biking trail with the possible reactivation of a railroad pursuant to the Trails Act.

*Id.* at 689. Because the plaintiffs' claim would "require" the court "to determine whether the

[federal] Trails Act creates, supplements, or replaces any previously existing railroad easement," a federal issue was necessarily raised. *Id*. at 690. In the instant case, however, Richardson's claims do not "require" the Court to resolve the federal preemption question.

Proposition 22 includes four statutory preconditions to its application. *See* Cal. Bus. & Prof. Code § 7451 ("[A]n app-based driver is an independent contractor and not an employee or agent with respect to the app-based driver's relationship with a network company if the following conditions are met . . . ."). Richardson contends DoorDash has failed to meet those preconditions, and therefore the dashers are not classified as independent contractors under the statute. *See* Dkt. No. 33-2 ¶¶ 86, 96. In the alternative, Richardson avers that even if DoorDash did comply with Proposition 22, the FAAAA preempts the statute. *Id*. These allegations anticipate DoorDash's reliance on Proposition 22 and seek to counter that argument through federal preemption. But the Supreme Court has held:

> It is not enough that the plaintiff alleges some anticipated defense to his cause of action, and asserts that the defense is invalidated by some provision of the Constitution of the United States. Although such allegations show that very likely, in the course of the litigation, a question under the Constitution would arise, they do not show that the suit, that is, the plaintiff's original cause of action, arises under the Constitution.

*Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). Ultimately, there is a threshold factual inquiry the Court—or potentially the jury—must address prior to reaching preemption, namely whether the evidence shows DoorDash complied with Proposition 22's preconditions. Accordingly, the federal issue is not "an essential element" of Richardson's claim, since the Court would not address preemption if the evidence established DoorDash failed to comply with Proposition 22. *Hornish*, 899 F.3d at 689 (citation omitted).

//

//

//

//

//

//

United States District Court
Northern District of California

## CONCLUSION

Absent a federal issue necessarily raised by the Second Amended Complaint, the Court lacks subject-matter jurisdiction. Therefore, the case is **REMANDED** to the Alameda County Superior Court. The Clerk of Court **SHALL** transmit the file to the Alameda Superior Court and close this case.

**IT IS SO ORDERED.**

Dated: September 10, 2026

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**